IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PROLINE MATERIALS, INC., a Texas corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case Number CIV-13-156-C |
| PROLINE PRODUCTS, LLC., an Oklahoma limited liability company, | ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Defendant sells a cold asphalt formula through its company, Proline Products, LLC. Plaintiff has purchased products from Defendant for the last eight or more years. The purchase of products was originally governed by what is known as the 2004 Agreement and later by an amendment to that Agreement, known as the 2011 Amendment. Arguing that Defendant breached the terms of the 2011 Amendment, Plaintiff brought the present action raising seven counts. Count I asserts breach of contract related to prices on the 2011 Amendment; Count II alleges breach of contract for distributing products in Texas in contravention of the agreement that Plaintiff would have the sole distributorship in Texas; Count III asserts a claim for unjust enrichment related to certain fees paid in connection with the 2011 Amendment; Count IV alleges a claim of bad faith breach of contract; Count V alleges interference with economic relations; Count VI asserts injurious falsehood/slander; and Count VII requests an injunction to stop the sales of products in Texas.

Defendant filed a counterclaim raising two counts. The first seeks a declaratory judgment that Plaintiff terminated the Agreement in November of 2012 and as a result Defendant has no further obligation to Plaintiff. In the alternative, in the event the Court finds the contract remains in force, Defendant requests a determination that Plaintiff has breached the contract by developing and marketing a competing cold patch asphalt product.

The parties have filed cross-motions for partial summary judgment seeking resolution of portions of the claims at issue in this matter.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds

of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

**Plaintiff's Motion for Partial Summary Judgment**

In Count I, Plaintiff argues that Defendant has breached the terms of the 2011 Amendment in two alternative ways. Both are dependent on the meaning of the term "raw material cost." The controlling sentence of the 2011 Amendment is as follows: "Proline Materials Inc will pay raw material cost only along with a blending fee estimated to be $1,000.00 per blended order. All other cost will be recovered in royalty fees as set forth." (Dkt. No. 1, Ex. 2.). According to Plaintiff, Defendant breached the terms of the 2011 Amendment by including inbound freight charges within the "raw material cost." For its alternative argument, Plaintiff accepts that "raw material cost" may include freight charges; however, Plaintiff asserts the freight charges passed on by Defendant exceeded the actual amounts charged for the product used for Plaintiff's order. The example cited by Plaintiff

3

involved a purchase of 6,012 gallons of a particular oil by Defendant. However, when producing product for provision to Plaintiff, Defendant did not use all 6,012 gallons of the oil. Nevertheless, Defendant charged Plaintiff for the freight on the entire 6,012 gallons. Plaintiff argues this conduct by Defendant was a breach of the 2011 Amendment, as it overcharges Plaintiff for the raw material cost.

The issue in Count I is a contract dispute governed by Oklahoma law. Thus, the following standards set forth by the Oklahoma Supreme Court govern:

> The following elementary rules of contract law are applicable here. The courts will read the provisions of a contract in their entirety, Mortgage Clearing Corp. v. Baughman Lumber Co., 1967 OK 232, ¶ 11, 435 P.2d 135, 138, to give effect to the intention of the parties as ascertained from the four corners of the contract, and where the language is ambiguous, it will be interpreted in a fair and reasonable sense. Id., at ¶ 13, 435 P.2d at 139; 15 O.S.2001, §§ 155 and 157. The courts will read the contract language in its plain and ordinary meaning unless a technical meaning is conveyed. Pitco Production Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶ 14, 63 P.3d 541, 545–546. The courts will decide, as a matter of law, whether a contract provision is ambiguous and interpret the contract provision as a matter of law, id., at ¶ 12, 63 P.3d at 545, where the ambiguity can be cleared by reference to other provisions or where the ambiguity arises from the contract language and not from extrinsic facts. Paclawski v. Bristol Laboratories, Inc., 1967 OK 21, ¶ 24, 425 P.2d 452, 456.

Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc., 2007 OK 12, ¶ 27, 160 P.3d 936, 946 (footnote omitted). "[T]he test to be applied in determining whether a word [or phrase] is ambiguous is whether the word [or phrase] 'is susceptible to two interpretations' on its face." Cranfill v. Aetna Life Ins. Co., 2002 OK 26, ¶ 7, 49 P.3d 703, 706 (quoting Littlefield v. State Farm Fire & Cas. Co., 1993 OK 102, ¶ 7, 857 P.2d 65, 69).

4

The test "is applied from the standpoint of a reasonably prudent lay person, not from that of a lawyer." Cranfill, 2002 OK 26, ¶ 8, 49 P.3d at 706 (citing Couch on Insurance 3d § 21:14 (1995)).

Applying these rules of interpretation, the Court finds the phrase "raw material cost" to be unambiguous and that the term "cost" includes the inbound freight cost for the material. Thus, Defendant's passing through of inbound freight charges to Plaintiff was not a breach of the 2011 Amendment.

As for Plaintiff's alternative argument regarding the amount of freight charged, the Court cannot determine, based on the materials before it, whether or not Defendant's actions in this regard were proper. There are only brief excerpts of deposition testimony and in those excerpts it appears that, for at least some products, there was a minimum purchase, or that Defendant could not have purchased a smaller quantity. In those instances, passing on the entire freight charge to Plaintiff as part of the cost would have been proper. However, in those circumstances where Defendant in fact used any leftover products or otherwise could recover its cost from another source, it would have been improper and a breach of the contract to pass 100% of the freight charges to Plaintiff. These issues remain for resolution at trial. Questions also remain regarding whether or not Defendant actually undercharged Plaintiff in certain instances for its raw material cost. Again those issues must be resolved at the trial of this matter. Accordingly, Plaintiff's Motion for Partial Summary Judgment will be denied.

**Defendant's Motion for Partial Summary Judgment**

Defendant seeks summary judgment on Plaintiff's Counts II-VII, and Defendant's counterclaim Counts I and II.

Count II

In Count II of the Complaint, Plaintiff alleges that Defendant has breached the contract by marketing its products within the state of Texas. According to Plaintiff, the 2011 Amendment granted Plaintiff the sole right to distribute Proline Additive Blend to its customers in Texas. Defendant argues it is entitled to judgment on this claim, as it is clear that all agreements and contracts between the parties have been terminated. In responding to the summary judgment motion, Plaintiff admits that there is currently no contractual provision preventing Defendant from selling its products in the state of Texas. Accordingly, Defendant is entitled to summary judgment on Count II of Plaintiff's Complaint.

Count III

Count III of Plaintiff's Complaint seeks to recover for unjust enrichment. According to Plaintiff, it paid Defendant $500,000 for the sole right to distribute Defendant's products in the state of Texas. Between $190,000 and $200,000 of that sum was to purchase Defendant's ownership shares in Plaintiff. The remainder was a one-time royalty payment for the right to distribute products in the state of Texas. Plaintiff argues it would be inequitable or unjust to permit Defendant to retain that entire $300,000-$310,000 since the contract was terminated a few short months after the payment was made, and as a result Plaintiff has lost the opportunity for the sole right of distributorship.

Initially the Court notes that "[w]here the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment." Harvell v. Goodyear Tire & Rubber Co., 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035. Further, the case relied upon by Plaintiff, Lapkin v. Garland Bloodworth, Inc., 2001 OK CIV APP 29, ¶ 13, 23 P.3d 958, 963-64, derives its reasoning from French Energy, Inc. v. Alexander, 1991 OK 106, 818 P.2d 1234. There the Oklahoma Supreme Court noted that because the contract at issue had been premised on fraud, equity demanded it be rescinded and the parties returned to their original positions. To accomplish that, funds had to be returned. Here, there is no evidence from which the Court could determine that rescission of the contract is the proper remedy. While it may be that a breach of contract by Defendant is proven related to the freight charges, Plaintiff's remedies are then confined to breach of contract remedies. There is no statement or suggestion in the 2011 Amendment of any length of time or scope for the sole right of distributorship purchased by the payment. Consequently, the Court finds that Defendant is entitled to judgment on Plaintiff's claim for unjust enrichment.

Count IV

Count IV raises a claim of bad faith breach of contract. However, as Defendant notes, without contradiction by Plaintiff, Oklahoma has never extended its bad faith tort to contracts such as this. Rather, they have been extremely limited in scope to instances where there is a "special relationship" between the contracting parties. See Embry v.

Innovation Aftermarket Sys. L.P., 2010 OK 82, ¶ 6, 247 P.3d 1158, 1160. There is no evidence before the Court suggesting such a special relationship. Consequently, Defendant is entitled to judgment on Count IV of Plaintiff's Complaint which seeks damages for a bad faith breach of contract.

Count V

Count V alleges interference with economic relations, arguing that Defendant has reached out to one of Plaintiff's customers in contravention of Plaintiff's sole right to distribute Proline in the state of Texas. As noted above, any sole right held by Plaintiff was ended when the contract was terminated in November 2012. Consequently, Defendant is entitled to judgment on Plaintiff's claim for interference with economic relations.

Count VI

In Count VI, Plaintiff argues that it is entitled to recover for falsehoods or other defamatory statements made by Defendant. Defendant seeks judgment, arguing that Plaintiff has offered no evidence that at any point in time it can support its claim for the injurious falsehood/slander count. Plaintiff did not respond to this allegation in its response brief. Indeed, the only argument or evidence offered by Plaintiff was a response to ¶ 9 of Defendant's statement of undisputed material facts where Plaintiff made the conclusory statement that it denies that it has presented no evidence to support its slander and referenced an excerpt from a deposition. As Defendant notes, that deposition excerpt only relates a statement of what the deponent was told by a third party. Such a hearsay

statement does not rise to the level of offering proof to demonstrate the existence of an injurious statement or slanderous statement. Defendant has offered evidence and argument indicating that through the discovery process this hearsay statement is the only evidence in Plaintiff's possession to support its claim.

> When the party moving for summary judgment makes a showing that there is no evidence to establish an essential element of the claim, the burden then shifts to the party opposing the motion. That party must respond with evidence or citations to the record that dispute the motion for summary judgment.

McKibben v. Chubb, 840 F.2d 1525, 1532 (10th Cir. 1988).

The Court finds that Defendant has made a sufficient showing of a lack of evidence to support the slander claim raised by Plaintiff and that Plaintiff has failed to counter that showing with any admissible evidence demonstrating the existence of a viable slander or defamation claim. Consequently, Defendant is entitled to judgment on Count VI of the Complaint.

Count VII

Count VII of Plaintiff's Complaint seeks an injunction to enforce its exclusive right to sell in the state of Texas. As set forth herein, any such sole right ended when the 2011 Amendment and the 2004 Agreement were terminated in November 2012. Consequently, Defendant is entitled to judgment on Count VII of Plaintiff's Complaint.

Counterclaims

Defendant also seeks judgment on Count I of its counterclaims. Count I seeks a declaratory judgment that the 2004 Agreement, as amended by the 2011 Amendment, was terminated in November 2012. Plaintiff has offered no evidence or argument countering this request and, based on the undisputed material facts, it appears clear that the Agreement, as amended, was terminated in November of 2012. Consequently, Defendant is entitled to judgment on Count I of the counterclaim.

In Count II of the counterclaim, Defendant argues that Plaintiff has breached certain non-compete provisions of the 2004 Agreement. Plaintiff argues that whether or not those non-compete provisions are in force depends upon under which provision of the 2004 Agreement the contract was terminated.

The sections of the 2004 Agreement at issue in this dispute are Sections 3, 14, and 15. Section 3 sets forth certain limitations on the parties relative to their relationship and also bars Plaintiff from developing, producing, selling, distributing, or promoting the sale of any competing bulk cold asphalt products within Plaintiff's territory during the term of the Agreement and for 18 months after its termination. Section 14 discusses ways in which the Agreement can be terminated without advance notice. Section 15 governs termination with notice. Section 15 includes language restricting Plaintiff's ability to compete. According to Plaintiff, the inclusion of this language in Section 15 means that the restrictions in Sections 3 and 15 apply only if the termination occurs pursuant to Section 15. Plaintiff argues that since the termination occurred pursuant to Section 14 there is no

11

competition restriction. Defendant disputes whether the termination was pursuant to Section 14 or Section 15. Defendant argues that regardless of which section governs the termination, the language of Section 3 applies.

15 Okla. Stat. § 157 resolves the dispute. That statues states: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Applying that law, the Court finds that regardless of which section provided the basis for the termination, the language of Section 3 applies and Plaintiff was barred from competing with Defendant within the state of Texas for 18 months following termination of the contract. Consequently, Defendant is entitled to judgment on Count II of its Counterclaim.

Finally, Defendant argues that because Plaintiff's damages claim is now limited to the amount, if any, of the freight overcharges, the amount of damages falls below the jurisdictional threshold and the Court lacks subject matter jurisdiction. The Tenth Circuit has stated:

> "[T]he amount in controversy requirement is determined at the time the complaint is filed." [Watson v. Blankinship, 20 F.3d 383,] 387 [(10th Cir. 1994)]. Just because the jury does not find that "plaintiff is entitled to the required amount does not necessarily destroy jurisdiction or prove that the plaintiff acted in bad faith." Id. The test for determining the amount in controversy 'is not the amount ultimately found due.'"

Broderick v. Keller, 29 Fed.Appx. 518, 521 (10th Cir. Jan. 24, 2002) (quoting Gibson v. Jeffers, 478 F.2d 216, 220 (10th Cir. 1973)). Here, at the time Plaintiff filed the action, the amount in controversy exceeded the jurisdictional threshold and there is no evidence the

12

damages assertion was in bad faith. Consequently, the later rulings limiting the amount of damages, if any, available to Plaintiff do not deprive the Court of subject matter jurisdiction.

## **CONCLUSION**

As set forth more fully herein, Plaintiff Proline Materials, Inc.'s Motion for Partial Summary Judgment (Dkt. No. 28) is DENIED. Defendant's Motion for Partial Summary Judgment (Dkt. No. 26) is GRANTED. A separate judgment will issue at the close of the case.

IT IS SO ORDERED this 14th day of May, 2014.

_____
ROBIN J. CAUTHRON
United States District Judge